## NELSON v. FIRST NAT. BANK OF KILLINGLEY.

(Circuit Court, D. Minnesota. November 30, 1895.)

1. VACATING JUDGMENT—EFFECT OF AFFIRMANCE ON APPEAL.
    A judgment which has been affirmed stands in the same position, after the mandate is sent down, that it did before the writ of error was·allowed; and may be attacked by an original bill in equity, and vacated and set aside on the ground that it was obtained by fraud or perjury, or through accident or mistake, or for other sufficient equitable reasons.

2. SAME—VERDICT OF JURY—PRESUMPTIONS.
    In an· action at law against a surety on a note one defense was that certain collateral originally held by plaintiff was exchanged without the surety's consent for other collateral, which was worthless. A verdict was
    · returned for the full amount due on the note, and judgment entered accord-

ingly. Afterwards a bill was brought to enjoin collection of the judgment on the ground of perjury of plaintiff's witnesses in their testimony upon the question whether the surety had consented to the exchange of collateral. It was contended that the rendition of a verdict for the full sum due involved a finding that the surety had consented to the exchange. *Held,* that the verdict might have been based on a finding that the original collateral was worthless, there being evidence to warrant such a finding; and that on a motion for a preliminary injunction the court could not assume that the verdict was based solely on the issue in respect to the surety's consent; for which reason the injunction must be denied.

3. SAME—ENJOINING COLLECTION.

An injunction restraining the collection of a judgment at law will not be granted if there is reasonable doubt of the existence of the facts upon which the application is founded. To warrant such action it must clearly appear that it is against good conscience to permit the creditor to enjoy the fruits of his judgment.

This was a bill by C. N. Nelson against the First National Bank of Killingley to vacate a judgment in favor of defendant. Complainant moved for an injunction pendente lite to stay execution on the judgment.

Warner, Richardson & Lawrence, for complainant.

Munn, Boyeson & Thygeson (John M. Gilman, of counsel), for defendant.

NELSON, District Judge. A bill is filed in equity to vacate and set aside a judgment obtained February 6, 1894, for the sum of $15,636.52, in the circuit court of the United States, by the Bank of Killingley against C. N. Nelson, an accommodation indorser upon a note of one D. M. Sabin. This note, dated August 20, 1884, was payable to the order of D. M. Sabin, the maker, six months after date, with interest at the rate of 6 per cent. per annum, indorsed by D. M. Sabin, W. S. Goodhue, and C. N. Nelson, and the bank held as collateral thereto special preferred stock of Seymour, Sabin & Co., guarantied by the Northwestern Manufacturing Company. A writ of error was prosecuted to the circuit court of appeals, the judgment was affirmed (69 Fed. 798), and a mandate sent down, before the filing of this bill.

The rule is pretty well settled in a case of this kind that the judgment of the lower court stands in the same position that it did before the writ of error was allowed, and may be attacked by an original bill in equity, and vacated and set aside, on the ground that it was obtained by fraud or perjury, or through accident or mistake, or for any good and sufficient equitable reasons. The principal grounds alleged in the bill of complaint for granting the relief claimed, and also relied upon on the argument, and the only ones I deem it necessary to consider on this motion for an injunction, are: First, alleged perjury committed by plaintiff's witnesses on the trial; and, second, newly-discovered evidence, which it is alleged it was impossible to have obtained knowledge of before or at the trial, which evidence, it is claimed, would have established facts releasing the liability of Nelson. With reference to the alleged charge of perjury as a ground for setting aside the judgment, it appears that on the trial of the case one of the defenses to which testimony was directed was

whether Nelson had given his consent to an exchange of the collateral held by the bank, and one of the main issues litigated was whether the collateral so originally held had any value or not. The law applicable to the facts disclosed by the evidence on these issues was correctly given by the trial judge, and was approved by the appellate court. If Nelson had given his consent to the change, certainly he could not complain that the stock substituted was worthless, no matter what might have been the actual value of the original collateral. It is urged that, inasmuch as the verdict was for the precise amount called for by the note, and inasmuch as there was no evidence that the collateral was of no value when disposed of by the bank, therefore the verdict necessarily proceeded upon the theory and inference that the exchange of the collateral was made with Nelson's consent first had and obtained. It does not appear that the verdict was rendered upon that ground. It may have been rendered upon the ground that the original collateral was wholly worthless. It is a mistake of counsel to say there was no evidence that the original collateral was of no value when disposed of by the bank. Evidence was given on both sides with regard to this matter. It was an issue vital in the case, and the record shows ample testimony upon which the jury could have rendered such a verdict; and, inasmuch as the verdict may have been rendered upon the ground that the original collateral was of no value, this court, upon motion for an injunction on the ground of perjury, cannot hold that the verdict was based solely upon the issue of the consent or nonconsent of Nelson to the exchange.

This brings me to the second question presented,—the claim of newly-discovered evidence in reference to an agreement between the bank and Sabin, the maker of the note, for an extension of time. It is true that when the owner of a note by some affirmative act extends to the maker the time within which he may pay, by an agreement unknown to the surety, founded upon a valuable consideration, and that extension of time is for a definite period, so that the owner of the note cannot proceed to collect from the maker until the additional time granted has expired, the surety will be discharged. It is doubtful whether the alleged agreement comes within this rule; but, if it be conceded that it does, then the question arises upon this motion whether this is not merely a naked statement in the bill, unsustained by legal proof sufficient to justify the court in granting the extraordinary remedy asked for. The proof offered by complainant with reference to the alleged agreement is contained in certain letters from Clemons, the cashier of the bank, to Sabin, Sabin to O'Gorman, and Nelson to Clemons. As far as the alleged agreement claimed to be contained in these letters is concerned, the verification of Nelson to the bill is merely upon information and belief; and on reading the letters I am clearly of the opinion that the matters therein contained in no way refer to an agreement of the character set up in the bill itself. The allegations in the bill that an agreement was entered into as therein set forth are fully met and denied by the affidavits of defendant, and it is only by a forced and strained interpretation of the letters that the significance sought to be at-

tached to them by complainant can be put upon them. A party who has obtained a judgment at law is prima facie entitled to the money thus recovered, and an injunction restraining the collection thereof will not be granted if there is reasonable doubt of the existence of the facts upon which the application is founded. To deprive the bank of the fruits of its judgment by a preliminary injunction, it must clearly appear from the charge in the bill, sustained by accompanying affidavits, that it is against good conscience to permit it to enjoy them; and the equity of the complainant, on motion for the injunction, must be shown to be superior to that of the judgment creditor. Upon careful examination, the proof offered, in my opinion, shows no primary equity in the complainant, and is not of such a character as to entitle him to the writ prayed for. The motion for the writ of injunction is denied, and the order to show cause is vacated.